UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL SUPPLIES NY, INC.<br>138 31ST STREET<br>BROOKLYN, NY 11232-1800<br><br>   Plaintiff,<br><br>  v.<br><br>ELECTROLUX HOME PRODUCTS, INC.<br>10200 DAVID TAYLOR DRIVE<br>CHARLOTTE, NC 28262-2373<br><br>  and<br><br>KIPP K. DYE<br>12 ROCKWOOD RD.<br>NATICK, MASSACHUSETTS 01760<br><br>  and<br><br>PERFORMANCE SOLUTIONS, LLC<br>5 COMMONWEALTH RD STE 2A<br>NATICK, MA 01760-1526<br><br>  and<br><br>SIMPLE WISHES, LLC<br>384 WYNDGATE RD<br>SACRAMENTO, CA 95864-5945<br><br>   Defendants. | CASE NO:<br><br>**COMPLAINT**<br><br>**JUDGE**<br><br><br>**(JURY DEMAND ENDORSED HEREON)** |

Plaintiff Global Supplies NY, Inc. ("GSNY"), alleges on knowledge as to itself, but otherwise on information and belief, as follows:

1

# INTRODUCTION

1. This case is about greed disguised as "patent protection." With the advent of Amazon has come a fight for the right (or wrong) to display goods in the ecommerce platform owned and controlled by Amazon, i.e. amazon.com. A former Investigation Specialist for Amazon's Seller Performance team, Chris McCabe, has written about the misuse of the Amazon rights reporting system. In his article, "Have you noticed How Unpredictable Amazon's Notice Infringement teams are now?" https://www.ecommercechris.com/have-you-noticed-how-unpredictable-amazons-notice-infringement-teams-are-now/(February 21, 2019), Mr. McCabe observes (Exhibit 1):

    - Amazon's Notice Claim of Infringement Teams exist in theory to process intellectual property violations on the Amazon Marketplace at amazon.com;
    - In practice, trademark and other violations can come from anywhere, allege anything, and are rife with abuse;
    - The work of the Notice teams, though attempting to combat rampant abuse, has backslided of late to the point where Amazon's response to contested Intellectual Property Complaints makes "little to no sense;"
    - Amazon harshly enforces the brand owner complaints of counterfeiting by requiring at most that brand owners attest to having "test bought" the allegedly counterfeit product from the alleged counterfeiter;
    - Suspensions and expulsions from the Marketplace follow "bizarre behavior" on Amazon's part, where the reasons for adverse actions are highly mercurial, *re*stated repeatedly, and often have nothing to do with the reason for the suspension or expulsion; and
    - Accused sellers—in particular those with a history of notice claims (as many sellers have)--are left in a virtual "twilight zone" where they are not told and cannot learn the true reasons for harsh—at times lethal—action taken against their businesses.

2. Plaintiff Global Supplies NY Inc. ("GSNY") is a Brooklyn, New York business that operates within a market niche which serves as a valuable, efficient segment of the economy. Succinctly, the model is buying sealed product exactly as put into the

stream of commerce by the manufacturer--from a manufacturer's authorized distributor, authorized wholesaler or authorized retailer —and selling it at an enhanced price point online, but often at a cheaper price than other sellers are selling it for, thus benefiting customers, who get authentic product at a discount. Manufacturers and some "authorized resellers" frequently seek means— some unlawful-- to eliminate such niche market competition.[1]

3. Plaintiff GSNY buys product in the manufacturer's original packaging and does not repackage, modify, or otherwise change the product for resale, placing such products at Amazon for logistics under Amazon's Fulfillment by Amazon ("FBA") program.

4. GSNY brings this suit following its commercial and financial ruination as an Amazon third-party seller, resulting from (i) Defendants' libelous statements to Amazon, to the effect that plaintiff was a patent infringer and/or counterfeiter, and (ii) consequential tortious interference with Plaintiff's existing and prospective contract and business relationship with Amazon Services LLC.

5. Specifically, Defendants each filed intellectual property complaints ("IP Complaint") with Amazon against so-called Amazon Standard Identification Numbers ("ASIN")[2] such that any seller of the corresponding product, unless specifically excepted from

---

[1] Over Plaintiff's 10-year history of Amazon selling it has pursued other profit opportunities, e.g. closeout purchasing and the like, but the business model alleged best characterizes Plaintiff at the time of expulsion and during the year prior thereto.
[2] An Amazon Standard Identification Number (ASIN) is a 10-character alphanumeric unique identifier assigned by Amazon.com and its partners for product identification within the Amazon organization

the IP Complaint,[3] was deemed to be infringing the complainant's patent and subject to Amazon sanction[4] for so doing.

6. Contrary to the theory of Defendants' IP Complaints, however, Plaintiff's listing and sale of their patented products was perfectly lawful:

> There can be no liability to a seller in valid possession of *patented* goods based upon the re-sale of those goods. Under the "*first sale*" doctrine, a *patent* owner who transfers his goods to another has given up any right to restrict the re-sale of those goods to a consumer.
>
> *Kitty Walk Sys. v. Midnight Pass, Inc.*, 431 F. Supp. 2d 306, 307 (E.D.N.Y. 2006)

7. Utility patents protect inventions, not exclusive distribution rights. The patent holder has a right not to have its invention copied and commercialized for a certain period of time; but it does not have the right to restrict sales of patented products by a purchaser lawfully in possession thereof. Defendants misuse of Amazon's patent protection procedures to eliminate perfectly legitimate competition amongst sellers of patented products is the essence of the challenged wrongdoing at suit.

**OVERVIEW**

8. GSNY became a third-party seller on Amazon in 2010 and operated continuously thereafter until the events at suit. To become an Amazon seller GSNY signed

---

[3] If you believe that only a subset of sellers is infringing, and you are not accusing the entire product detail page, click the checkbox next to the name of each seller you are reporting in the Report Infringement form or RAV.
https://sellercentral.amazon.com/gp/help/external/help.html?itemID=U5SQCEKADDAQRLZ&ref=efph_U5SQCEKADDAQRLZ_cont_G2

[4] "A Rights Owner can report an ASIN, seller, or product detail page content when submitting an IP infringement notice." *Id.*

Amazon's standard Business Solutions Agreement that, among other things, allowed Amazon to terminate GSNY as a seller for any reason or for no reason at all.

9. GSNY routinely listed approximately 1000 brand names on amazon.com, and sold over 3,000,000 units of product to customers on Amazon with a 93% lifetime positive feedback rating. Plaintiff reached $4.1 million in sales during its last six months of Amazon operations, at a 12% net margin, or $492,000 in profits, i.e. monthly profits of $82,000. Of the approximate 1000 brands GSNY listed, all of which are identified by intellectual properties such as patents and trademarks, four (4) owners of such intellectual properties ("Rightsowner" or "RO") falsely complained to Amazon of patent infringement ("IP complaint"). As a direct result of such IP's, Plaintiff's once-thriving Amazon business is now a remnant of its former self.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest. Plaintiff's lost profits are $9,840,000, discounted at a 3% discount rate over a reasonably certain 10-years of additional Amazon operations, to $8,393,720.[5]

11. The alleged acts of libel and tortious interference directed at GSNY effected an "injury that would be felt by [the plaintiff] in the State in which []he lives and works, *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487 (1984), and Defendants'

---

[5] Calculation in accordance with https://www.buffettsbooks.com/how-to-invest-in-stocks/advanced-course/lesson-35/

5

"allegedly tortious actions were expressly aimed at" New York. *Lopez v. Shopify, Inc.,* 2017 U.S. Dist. LEXIS 77708, at *23 (SDNY 2017).

12. Personal jurisdiction by this Court over Defendants is proper pursuant to CPLR § 302(a)(1) because Defendants all (i) transacted business or contracted to supply goods or services in New York, and (ii) the "transaction of business" had a substantial relationship to, or an articulable nexus with, the claims asserted by GSNY against each Defendant. The transaction of business by Defendants in New York supportive of personal jurisdiction is elaborated *infra* in ¶¶18-20 as to Electrolux, ¶27-30 as to Defendants Performance Solutions, LLC and Kipp Dye, and ¶¶35-36 as to Defendant Simple Wishes, LLC. Further, each Defendant has a regular flow of sales into New York, i.e. minimum contacts, thus rendering personal jurisdiction Constitutional.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in the Eastern District of New York, namely, Plaintiff's listing of products on, receipt of notices, and permanent expulsion from amazon.com.

## FACTS

**A. ELECTROLUX**

14. Electrolux Home Products, Inc. ("EHP") is a Delaware corporation having its headquarters at l0200 David Taylor Drive, Charlotte, NC 28262.

15. Electrolux is a U.S. subsidiary of Electrolux North America, Inc., which is a subsidiary of AB Electrolux (these and other related companies are under the umbrella "Electrolux Group"), a Swedish home-appliance manufacturer, ranked the

6

world's second largest appliance maker by units sold. Globally, Electrolux Group sells more than 60 million products to customers in more than 150 markets each year, and in 2017, the company reported $14.6 billion in sales, of which $4.76 billion came from Electrolux.

16. Electrolux Group is the owner of the famous Frigidaire® brand of appliances, which includes the Frigidaire® line of refrigerators.

17. Certain of the Frigidaire® refrigerators designed and produced by Electrolux include ice and water modules ("IWM") for producing ice and dispensing ice and water to users, and certain IWMs are protected by U.S. Patent No. 9,901,852 in which EHP has an interest.

18. EHP maintains a proprietary, highly interactive website online and offers IWM's for sale to the general public, including in New York State.[6]

19. EHP develops and coordinates advertising and promotional matter for IWM's on amazon.com, also a highly interactive online website which serves as the primary means for competing sellers, such as GSNY, to list the ASIN featured on a given "Product Detail Page ("PDP")."[7] It was GSNY's listing of just such an IWM in EHP's PDP, albeit as an "Other Seller on Amazon," that incited Electrolux to lodge its IP Complaint against Plaintiff.

---

[6] See, e.g. https://www.electroluxappliances.com/Search-Results/?q=ULTRAWF

[7] There is no limit to the number of sellers who can use the Amazon platform; hence, multiple merchants frequently sell the exact item featured on the product detail (PDP), i.e. a web page that presents a description about a specific product in view. 82% of Amazon retail sales are made from the "Buy Box" in the right of the PDT. Plaintiff and other third-party sellers usually offer the specific product, linked to the PDT, in the so-called "Other Sellers on Amazon" located in the bottom right quadrant of the PDP. It is rare for a third-party seller to "win the Buy Box."

20. EHP franchises numerous business throughout New York state to offer for sale and sell IWM's, including Walmart.

20. Plaintiff *listed* one or more IWM's on EHP's PDP and EHP submitted IP Complaint No. 5270816781to Amazon on August 9, 2018, falsely accusing Plaintiff and other sellers of patent infringement.  Exhibit 2.  Plaintiff never sold a single EHP product.  Nevertheless it was Plaintiff's and others' listings on Amazon of IWM's that incited Electrolux to lodge its IP Complaint.

21. On May 1, 2019, following its expulsion from Amazon, Plaintiff emailed a request to Electrolux counsel requesting that EHP withdraw its aforesaid IP Complaint because Plaintiff had never sold a single IWM and, if it had, the IWM would have been purchased from Walmart, an EHP-authorized reseller with whom Plaintiff had a history of purchases of home products.[8]

22. EHP never responded to Plaintiff's email request and never withdrew EHP'S libelous IP Complaint.

23. On April 29, 2019 Amazon cited EHP's IP Complaint and failure of Plaintiff to secure its withdrawal as reason for GSNY's expulsion from the Amazon platform.

B.  **PERFPRMANCE SOLUTIONS LLC/KIPP DYE**

24. Defendant Kipp K. Dye ("Dye") is an individual having a residence address of 12 Rockwood Rd., Natick, Massachusetts 01760.  Mr. Dye personally lodged a subject IP Complaint against Plaintiff.

---

[8] Amazon encourages retractions where the targeted seller was not at fault: "A seller may reach out to you requesting a retraction, and if relevant, you can notify Amazon through the appropriate email queue (as provided by the seller )."
https://sellercentral.amazon.com/gp/help/external/help.html?itemID=U5SQCEKADDAQRLZ&ref=efph_U5SQCEKADDAQRLZ_cont_G2

25. Defendant Performance Solutions, LLC ("Performance") is a Massachusetts limited liability company having a place of business at 5 Commonwealth Rd. Suite 3A, Natick, Massachusetts 01760.

26. Performance is the owner of a U.S. patent protecting one or more therapeutic, fitness, and sports enhancement devices ("Devices"), to wit: U.S. Patent No. 9,345,921. Similar to EHP, Dye/Performance coordinates Amazon listings of Devices which serve as a magnet for other sellers to offer Devices on amazon.com.

21. Plaintiff listed one or more Devices on Amazon and Dye/Performance submitted an IP Complaint to Amazon on August 3, 2018, falsely accusing Plaintiff of patent infringement. Exhibit 3. Plaintiff never sold a single Device. Nevertheless it was Plaintiff's and others' listings of Devices on Amazon that incited Performance/Dye to lodge its IP Complaint.

27. On May 27, 2019, following its expulsion from Amazon, Plaintiff emailed a request to Dye/Performance requesting that they withdraw the aforesaid IP Complaint, and noting that Plaintiff had never sold a single Performance product and, if it had, the product would have been sourced from one of Performance's authorized retailers.

28. Dye responded as follows: "We make complaints against ASIN's, not sellers . . . Amazon must feel that you had an offer for one or more of these ASIN's. Sorry, we cannot issue a retraction against any of these ASIN's. Kipp"[9]

---

[9] Dye/Performance are in litigation in the Central District of California for the same essential wrongdoing as here. *ProSource Discounts, Inc. v. Kipp Dye, et al.,* Case No.19-00489 (C.D.C.A. filed January 22, 2019).

9

29. On April 29, 2019 Amazon cited Dye/Performance's IP Complaint and Plaintiff's failure to secure its withdrawal as reason for GSNY' expulsion from the Amazon platform.

C. **SIMPLE WISHES**

30. Defendant Simple Wishes, LLC ("SWL") is a California limited liability company having a place of business at 384 Wyndgate Rd Sacramento, CA 95864.

31. SWL is the owner of a U.S. Patent No. 8,323,070 protecting a garment (e.g. a "Bra") that can be used by a wearer during extraction of breast milk using a breast pump. Similar to EHP and Dye/Performance, SWL coordinates Amazon listings of Bras which serve as a magnet for other sellers of Bras on amazon.com.

22. Plaintiff listed one or more aforesaid garments on Amazon and SWL submitted an IP Complaint No. 5082244111 to Amazon on May 23, 2018, falsely accusing Plaintiff of patent infringement. Exhibit 4. Plaintiff never sold a single Bra. Nevertheless it was Plaintiff's and others' listings of Bras on Amazon that incited SWL to lodge its IP Complaint.

32. Plaintiff emailed and spoke with SWL on June 25, 2018, emailed SWL on June 27th, and again emailed and called SWL on April 30 and May 1, 2019, seeking a retraction of the false complaint and submitting proof that GSNY never sold a single SWL Bra.

33. SWL responded by email, stating (erroneously): "The intention to sell is all that really matters and that you broke the amazon terms and conditions by listing an item without authorization from the rights owner." Later, on the phone, on or about May

1, 2019, SWL's Elesha Nelson advised that it would not bother her if, as a result of her IP Complaint, Plaintiff had to close its business and lay off its workforce.

34. On April 29, 2019 Amazon cited SWL's IP Complaint and Plaintiff's failure to secure its withdrawal as reason for GSNY' expulsion from the Amazon platform.

### D. (Non-Defendant) ARM ENTERPRISES

35. Non-defendant Adrian Rivera Maynez Enterprises, Inc. dba ARM Enterprises ("ARM"), manufactures and sells Perfect Pod coffee products.

36. ARM's coffee pods are protected by U.S. Patent No. 8,707,855.

37. Plaintiff listed ARM's coffee pods on Amazon and ARM filed Complaint No. 5267739707.

38. On April 30, 2019, following its expulsion, GSNY sought ARM's retraction of its IP Complaint. ARM promptly retracted its complaint as follows: "At this time we are withdrawing the above-identified complaint against Amazon seller Global Supplies NY regarding ASIN: B00PBF3T3E."

39. Had Defendants herein emailed the same sentence to Amazon as Plaintiff requested, Amazon would have reinstated Plaintiff on the Amazon platform.

### E. OSTER WAFFLE MAKER[10]

---

[10] The Chinese owner of patents on a certain Oster waffle maker sued Amazon and a true patent infringer, that stole the subject invention, by reason of its platform offerings under various pseudonyms of Oster's patented invention. Amazon initially construed the matter as a de facto IP Complaint and carried over that construction in its confirmation of Plaintiff's expulsion on April 29, 2019. However, Amazon and the subject patent owner have long settled their litigation and the product has been sold by various sellers on Amazon without complaint from the patent owner. Plaintiff determined that the patent owner was without fault in the matter, as its complaint in the Eastern District of Texas named neither Plaintiff nor any ASIN offered by Plaintiff on Amazon. See *Tsann Kuen Enterprise Co Ltd v. Huayu Electrical Appliance Group*

11

## ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

40. But for Defendants' IP complaints to Amazon GSNY would not have been expelled from the Amazon Marketplace.

41. Plaintiff exhausted all possible administrative options at Amazon, including appellate procedures. Plaintiff was permanently expelled nonetheless.

42. There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

43. The above cascade of adversities destroyed the Amazon segment of Plaintiff's business, producing monthly profit of approximately $82,000. Accordingly, Plaintiff has been damaged, as a direct result of Defendants' actions alleged above, and with reasonable certainty, in the approximate amount of $9,840,000, i.e. net present value of $8,393,720.

44. Defendants actions and inactions, moreover, were calculated, willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $5,000,000, together with attorney fees to be determined by the Court.

**CLAIM I: INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS**

45. Plaintiff incorporates the allegations above as though the same were re-written at

---

*Co., Ltd. and Amazon.Com, Inc.,* Case No. 2:18-cv-488 (E.D.TX 2018). Plaintiff-Tsann Kuen was legitimately aggrieved.

length.

46. In order to state a claim for tortious interference with prospective economic advantage, plaintiff must plead facts sufficient to demonstrate that it had "(1)...business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) defendant's acts injured the relationship." *Catskill Development L.L.C. v Park Place Entertainment Corp.,* 547 F.3d 115, 132 (2d Cir. 2008); See also *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010).

47. As of the spring Plaintiff was a third-party seller on Amazon and thriving, sometimes referred to as a "Top Seller" on Amazon, meaning annual sales of $1,000,000 or more.

48. Each Defendant's accusations of patent infringement were unlawful *per se* and made more wrongful by the use of criminal means,[11] were made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with Plaintiff's business relationship with Amazon.

49. The accusations aforesaid proximately caused Plaintiff's expulsion from Amazon.

50. Discovery is necessary to identify other improper purposes and means, if any, for the challenged conduct.

51. Defendants' accusations were false and Defendants knew they were false at relevant times. The statements were made intentionally, maliciously and with ill will, as business entities do not lie about competitors absent a strong measure of ill will.

52. Amazon stated in writing that it took Defendant's accusations very seriously,

---

[11] Intentional use of the interstate wires to perpetrate a false statement is criminal conduct under(18 U.S.C. §1343.

threatened to terminate Plaintiff for repeated IP Complaints and, in fact, expelled Plaintiff as an Amazon third-party seller after receiving repeated IP Complaints.

53. Amazon stated that it would act favorably toward Plaintiff if Defendants' would retract their accusations; but Defendants refused to retract and/or ignored Plaintiff's request that they do so.

54. This entire tragedy would have been avoided had Defendants, as did ARM Enterprises, simply emailed a one-sentence retraction of their unlawful IP Complaints.

55. Defendants' acts destroyed Plaintiff's relationship with Amazon, thereby causing the destruction of Plaintiff's Amazon business segment.

56. The Amazon platform is an "essential facility" for any third-party seller in the world of retail ecommerce.[12] At least 50% of all online retail sales occur on Amazon. There is no substitute platform to reach the Amazon customer base.

### CLAIM II: TORTIOUS INTERFERNCE WITH CONTRACT

57. Plaintiff incorporates the above allegations as though the same were rewritten at length.

58. In order "[t]o state a contract-interference claim under New York law, a plaintiff must demonstrate the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach [or impairment], and the resulting damages to the plaintiff. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 124-25 (2d Cir. 2008)." *Innovative Biodefense, Inc. v. VSP Techs*., 176 F. Supp. 3d 305, 328 (S.D.N.Y. 2016)

---

[12] "Facility or infrastructure which is necessary for reaching customers and/or enabling competitors to carry on their business." https://www.concurrences.com/en/glossary-of-competition-terms/Essential-facility

59. Defendants' libelous IP complaints to Amazon proximately caused Amazon to expel Plaintiff from the Marketplace on April 18, 2019, and confirm the expulsion on April 29, 2018, with no right of appeal, thereby destroying Plaintiff's enjoyment of its contract with Amazon, as identified in ¶8 *supra.*

60. Although Amazon did not breach its contract with Plaintiff, Defendant's conduct impairing such contract was actionable "interference."[13]

### CLAIM III: LIBEL PER SE

61. Plaintiff incorporates the allegations above as though the same were re-written at length.

62. The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." Under New York defamation law, the Courts have distinguished "a limited category of statements" that are considered "libelous *per se* which do not require pleading and proof of special damages." *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985).

63. Defendants' accusations against Plaintiff charged Plaintiff with serious moral lapses in the nature of theft, to wit: patent infringement, a form of fraud, undertaken by means of interstate wire services, itself a Federal felony. 18 U.S.C. §1343.

---

[13] "[B]reach is not necessarily required . . . the harm is plaintiff's lost prospect . . . from an established and gainful business relationship." Dan B. Dobbs, Paul T. Hayden and Ellen M. Bullick, 3 The Law of Torts, §616 at 499 (2d).

64. Defendants' accusations amount to fraudulent patent enforcement.[14]

65. Defendants' accusations against Plaintiff to Amazon directly injured Plaintiff in its business and trade because, as they knew, Amazon will not tolerate repeated IP infringers as Amazon sellers.

66. Defendants' accusations against Plaintiff caused Plaintiff reputational injury.

67. Defendants' accusations against Plaintiff constitute libel *per se.*

68. Although injury may be presumed due to libel *per se,* Plaintiff suffered above and beyond presumed damages, e.g. loss of enterprise value and income. In particular, GSNY lost good will specific to the GSNY-Amazon relationship that cannot be recovered including, *inter alia,* Plaintiff's right to sell a broad range of products on amazon.com, much of which entitlement was grandfathered.[15]

WHEREFORE, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

  A. Compensatory, consequential and special damages equal at least to the net present value of lost profits in the amount of $8,393,720;

  B. Punitive damages of not less than $5,000,000;

  C. Attorney fees and costs; and

  D. Such other and further relief as the Court may order.

### JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

---

[14] See, e.g. https://patentlyo.com/patent/2016/02/million-fraudulent-enforcement.html

[15] As an established third-party seller, Plaintiff was entitled to sell many products that a new seller would be precluded from selling based upon Amazon's "gating" and other restrictions.

/s/Mark Schlachet_____
Mark Schlachet
Law Offices of Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390
Email:markschlachet@me.com

Counsel to Plaintiff Global Supplies NY, Inc.