# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL SUPPLIES NY, INC.<br><br>    Plaintiff,<br><br>   v.<br><br>ELECTROLUX HOME PRODUCTS, INC. et al.<br>    Defendants. | CASE NO:  19-4823 LDH-SMG<br><br><br>GLOBAL SUPPLIES NY, INC. MEMORANDUM IN OPPOSITION TO MOTIONS OF ELECTROLUX HOME PRODUCTS, INC. FOR SEVERANCE AND TRANSFER OF VENUE UNDER (ECF 56) |

# TABLE OF AUTHORITIES

Cases
*Curry v. Revolution Labs.,LLC*, 949 F.3d 385 (7th Cir. 2020)……………………………….5
*Higgins ex rel. Underwriters at Lloyd's v. Amazon.com, Inc.*, 2002 U.S. Dist. LEXIS 23670,
        at *2 (S.D.N.Y. 2002)……………………………………………………………………2
*In re TS Emp't, Inc.*, 2015 Bankr. LEXIS 2747, at *10-11 (Bankr. S.D.N.Y. 2015)………….4
*Licci v. Lebanese Can. Bank, SAL*, 2012 NY Slip Op 7854, ¶ 8, 20 N.Y.3d 327, 338, 960
        N.Y.S.2d 695, 701-02, 984 N.E.2d 893, 899-900…………………………………...…4
*Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 U.S. Dist. LEXIS
        85888, at *17-19 (E.D. Wash. 2010)…………………………………………………..3

Statutes/ Rules

28 U.S.C. §1404(a) ………………………………………………………………………......4
28 U.S.C. §1406(a) ……………………………………………………………………………4
Rule 45(c)(1)(A), Federal Rules of Civil Procedure……………………………………………3

Plaintiff filed an amended complaint against three (3) suspected wrongdoers. All had due opportunity prior to suit to explain how their conduct was not unlawful. Subsequent to commencement plaintiff again solicited innocent explanations for the filing of patent infringement complaints that plaintiff believed to be false. After much hard work with counsel for Kipp Dye and Performance Solutions LLC, plaintiff was able to dismiss them from this case. It turned out in their case that plaintiff had trusted Walmart postings to be non-infringing . . . but learned that Walmart's platform featured patent infringing exercise equipment from China which plaintiff had listed on Amazon in good faith. The remaining defendants have been unwilling or unable to explain their filing of IP complaints against plaintiff, as to products believed to be directly acquired by Walmart from defendants. Phony IP complaints are viral today.

In a case with a similar profile to the instant case, i.e. intentional tort, played out in the state of Washington, and most parties domiciled elsewhere, a District Court found Washington to be the appropriate venue:

> . . . .
> Considering these factors, Washington has the most significant relationship to this dispute . . . all of Thomas's relevant conduct occurred in Spokane. That is where he allegedly orchestrated the scheme to move Plaintiffs' business to Prime.
> . . . .
> Plaintiffs say in their Complaint that the "epicenter" of the whole scheme was in Spokane and the Spokane Valley. The purpose of choosing a state's tort law is to apply only the law of the state with the most significant relationship to the claim. *See* Restatement (Second) Conflict of Laws § 1. Applying several states' laws to different tort claims in the same case thwarts that purpose.

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 U.S. Dist. LEXIS 85888, at *17-19 (E.D. Wash. 2010).

Electrolux has submitted motions to sever and change venue to North Carolina, with Delaware as its second choice. It seeks to splinter this action in every way when to do so is not

1

indicated by the facts, the law, or the indivisible nature of plaintiff's injuries and damages. Important facts according to Electrolux include the following:

- GSNY was temporarily banned from Amazon after incurring at least 20 complaints of patent infringement and counterfeiting;[1]
- It is unknown when the remaining complaints were lodged;
- Eight months after the alleged Electrolux complaint and 11 months after the Simple Wishes complaint, Amazon expelled GSNY on April 29, 2019;
- The cumulative effect of each [alleged] IP complaint combined causes an Amazon suspension predicated on IP complaints;
- Each false IP complaint is thus a substantial causative factor and each false IP complainant is jointly and severally responsible for plaintiff's injuries
- Logically, such damages could be apportioned among the parties lodging the 20 patent and counterfeiting complainants against GSNY according to well-known methodologies, even if not precisely.

These facts that Electrolux views as worthy of mention suggest a need for Amazon witnesses that can be subpoenaed in Washington, but cannot be summoned to North Carolina. Moreover, Amazon's headquarters complex is in Washington state while Delaware is simply the state of incorporation of one of many Amazon entities.[2] Nothing in the core factual content of the case requires Electrolux witnesses; nor has Electrolux identified a single percipient witness tied to North Carolina or Delaware.

Unmentioned by Electrolux is that publication of the IP complaints occurred in Washington and plaintiff's suspension was determined and/or recorded in Washington, and its appeals rejected

---

[1] ECF 37-1 at Exhibit 5 indicates IP complaints from 5 patent owners, one of which was retracted, one of which was Amazon error, Performance Solutions (dismissed) and instant defendants. See ECF ¶¶18-46.

[2] "Amazon is a Delaware corporation headquartered in Seattle, Washington." *Higgins ex rel. Underwriters at Lloyd's v. Amazon.com, Inc.*, 2002 U.S. Dist. LEXIS 23670, at *2 (S.D.N.Y. Dec. 4, 2002)(transferred to Washington).

in Washington . . . rendering Washington a state where this action could have been commenced initially. Cf. 28 U.S.C. ¶¶1404(a) and 1406(a). In our view as we urged in ECF 55, by virtue of the situs and aftermath of the tort at suit, Washington is the presumptive venue at this point. Courts weighing a venue's suitability where, as here, Delaware is a corporate residence only, with critical corporate management located elsewhere, view Delaware as a matter of "happenstance," with no significant interest in the litigation.[3]

     Electrolux counsel speaks of the Electrolux witnesses and their convenience . . . but Electrolux has failed in several outings to establish the existence of a single Electrolux employee with relevant information. We know that Amazon paralegals in Washington are charged with important responsibilities in connection with IP complaints and procedures in adjudicating IP complaints. See Exhibit 1, Declaration of (Washingtonian) Paralegal Clarice Cohn, executed in Seattle, Washington, wherein she describes key features of Amazon Intellectual Property Reporting protocols. Accordingly there is much to indicate in this Washington-centered litigation that Amazon witnesses are both essential to this litigation and located in Washington. Rule 45(c)(1)(A), limits the reach of trial subpoena to 100 miles from the subpoenaed party's residence, place of employment or place of regular transaction of business to the place of testimony.

---

[3] "The only connection to Delaware is the happenstance of CRS's incorporation in that state. In *CORCO*, the Fifth Circuit emphasized the place where the management of the debtor took place, *see CORCO*, 596 F.2d at 1242-44, 1247-48, a factor that unquestionably points to venue in New York for the Delaware Debtors' cases as well." *In re TS Emp't, Inc.*, No. 15-10243 (MG), 2015 Bankr. LEXIS 2747, at *10-11 (Bankr. S.D.N.Y. Aug. 18, 2015). Amazon's management and staff more closely resemble the significance of a chapter 11 debtor's management than they do the chapter 11 debtor's domicile.

There are important documents to be accessed and, as with the witnesses, they are in Washington. Exhibit 2 is an example of an analogous counterfeit report from another case. It was obtained from Amazon (see Amazon Confidential marking at bottom), but Amazon's witness cannot be subpoenaed to the Florida venue, where the case is pending.

As to whether this court should factor in the personal jurisdiction issue (for which defendants impliedly criticize plaintiff and demand retribution) in assigning a transferee forum, we again do not concede that venue was improper in the first instance. Simple Wishes had extensive dealings in New York directly with plaintiff . . . and withdrew its opposition to this venue. Both defendants had interactive e-commerce websites, designed to accommodate New York purchasers. Electrolux targeted plaintiff actually or constructively . . . we don't know. How could plaintiff know the Electrolux facts when Electrolux itself is unable to identify the source of the relevant IP complaint?

We submit that plaintiff may well have prevailed on personal jurisdiction. But the task would have required a "deep dive" that plaintiff elected not to pursue in light of the court's candid remarks at the initial conference. "The jurisdictional inquiry under CPLR 302 (a)(1) necessarily requires examination of the particular facts in each case. And although determining what facts constitute 'purposeful availment' is an objective inquiry, it always requires a court to closely examine the defendant's contacts for their quality (*see Fischbarg v Doucet*, 9 NY3d 375, 380, 880 NE2d 22, 849 NYS2d 501 [2007])." *Licci v. Lebanese Can. Bank, SAL*, 2012 NY Slip Op 7854, ¶ 8, 20 N.Y.3d 327, 338, 960 N.Y.S.2d 695, 701-02, 984 N.E.2d 893, 899-900. Plaintiff should be lauded for promptly and inexpensively resolving an issue of personal jurisdiction . . . and seeking to move on . . . not castigated by those who would burden two courts with two cases when a single case is clearly indicated.

Electrolux derogates *plaintiff's* convenience in litigating in Washington where this case belongs.[4] Electrolux misses the point. The principle of economy of judicial administration, which Electrolux does not address, requires that a single District Judge in a District where the case initially could have been brought, i.e. Delaware or Washington, should administer the case. Plaintiff's claim is indivisible. Electrolux's purported damage formula--damages divided/allocated by 20 complaints--is not how tort law works. Intentional tort defendants ordinarily must take their plaintiffs as they find them, i.e. getting no "credit" because their target has a pre-existing susceptibility to harm.[5] In the world of Amazon, where a plaintiff might in good faith list goods seen on the Walmart platform—only to later learn that Walmart had permitted infringing goods on its website—it is quite normal and well known, i.e. foreseeable, that an innocent, targeted seller might have or yet accrue additional IP complaints lodged against her account. Electrolux *and* Simple Wishes culpability/causation will interplay with Amazon's logarithms and surveillance. If instant defendants' IP reports were a substantial factor in plaintiff's suspension, defendants will likely be jointly and severally liable for plaintiff's injuries in their entirety. Non-defendants who did nothing wrong, i.e. Performance Solutions, will not be factored into the damage calculation. Defendants will not likely be dividing indivisible damages by 20.

This case should, respectfully, be transferred to the Western District of Washington, as the other serious candidate, being Delaware, has no functional connection to the matter whatever.

---

[4] The one functional connection of this case to North Carolina is an attorney for Electrolux, admitted pro hac vice, whose office address is in Charlotte, NC. See ECF 34, Notice of Motion to Admit Counsel Pro Hac Vice.
[5] *Campbell v. Goga*, 2009 NY Slip Op 52656(U), ¶ 4, 26 Misc. 3d 1204(A), 1204A, 906 N.Y.S.2d 778, 778 (Sup. Ct.)

        Respectfully submitted,

        /s/Mark Schlachet_____
        Mark Schlachet
        Law Offices of Mark Schlachet
        3515 Severn Road
        Cleveland, Ohio 44118
        Telephone: (216) 225-7559
        Facsimile: (216) 932-5390
        Email:markschlachet@me.com

        Counsel to Plaintiff Global Supplies NY, Inc.

## **CERTIFICATE OF SERVICE**

The above Opposition Memorandum was served on all parties entitled to service thereof by means of the court's ECF system this 4th day of May, 2020.

        /s/Mark Schlachet_____
        Mark Schlachet